**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | | |
|---|---|---|
| NARVIEZ V. ALEXANDER, | ) | 3:10-cv-00429-RCJ (WGC) |
| | ) | |
| Plaintiff, | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF U.S. MAGISTRATE JUDGE** |
| vs. | ) | |
| | ) | |
| STATE OF NEVADA, et. al. | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This Report and Recommendation is made to the Honorable Robert C. Jones, Chief United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4. Before the court is Defendants' Motion to Dismiss. (Doc. 48.)[1] Plaintiff has opposed (Doc. #50), and Defendants replied (Doc. #51). After a thorough review, the court recommends that the motion be granted in part, and denied in part.

## I. BACKGROUND

Plaintiff Narviez V. Alexander (Plaintiff), a *pro se* litigant in custody of the Nevada Department of Corrections (NDOC), brings this action pursuant to 42 U.S.C. § 1983. (Pl.'s Am. Compl. (Doc. #8 ) at 1.) Plaintiff is currently housed at Lovelock Correctional Center (LCC). (Doc. # 48 Ex. A.) The events giving rise to this action took place while Plaintiff was housed at High Desert State Prison (HDSP). (Doc. # 8 at 1.) Defendants are Isidra Baca, Robert Bannister, Beebe Clark, Greg Cox, Duane Graham, Joseph Hanson, Bob Hartman, Cole Morrow, Dwight Neven, and Howard Skolnik. (*Id.* at 2-8, Screening Order (Doc. # 9).)

---

[1] Refers to court's docket number.

1    Counts VI and VII are the only claims that survived screening. (*See* Doc. # 9 at 8-9.)  In

2    Count VI, Plaintiff alleges that his Eighth Amendment rights were violated when Defendants

3    were deliberately indifferent to a serious medical need when they caused him to wait sixty-five

4    (65) days for pain medication or antibiotics for an abscess that resulted from a decayed tooth.

5    (Doc. # 8 at 31-32.)  He asserts that the abscess caused extreme pain, swelling, headaches, and

6    stomachaches.  (*Id.*  at 31-33.) Plaintiff claims that the tooth was decayed approximately one

7    year prior to the abscess forming and required a filling at that time, but the dentist, Dr.

8    Hanson, told him that he did not perform fillings and he would have to wait for the tooth to

9    further decay so it could be extracted.  (*Id.*  at 31)  He claims he was told that HDSP had a policy

10   of performing extractions only.  (*Id.*  at 32.)

11   In Count VII, Plaintiff alleges that Defendants acted with deliberate indifference to his

12   serious medical need when they failed to provide proper treatment for an ear infection in his

13   left ear. (Doc. # 8 at 34-37.) Plaintiff claims that he reported a suspected ear infection after

14   suffering a painful and swollen left ear, and that he saw a nurse who thought it was a fungal

15   infection, but he was never referred to a doctor or given antibiotics. (*Id.*  at 34-36.) Plaintiff

16   alleges that he continued to experience pain for sixty (60) days until the infection was purged,

17   but it caused damage to his ear. (*Id.*  at 37.)  During this time, he was never given pain killers.

18   (*Id.*)

19   Defendants move to partially dismiss Plaintiff's Complaint[2], arguing: (1) Plaintiff failed

20   to exhaust his administrative remedies with respect to Count VI; and (2) Plaintiff has not

21   alleged that Defendants Baca, Bannister, Cox, Graham, Hartman, Morrow, Neven, and Skolnik

22   violated the Constitution through their own actions. (Doc. # 48.)

23   ///

24   ///

25

26   [2] Defendants do not seek to dismiss the claim against Defendant Clark in Count VII.  (*See* Doc.

27   # 48 at 2.)

28
                                                    2

## II.  LEGAL STANDARD

### A.  12(b)(6) Motion to Dismiss

"A dismissal under Federal Rule of Civil Procedure 12(b)(6) is essentially a ruling on a question of law." *North Star Int'l v. Ariz. Corp. Comm'n.,* 720 F.2d 578, 580 (9th Cir. 1983) (citation omitted). Under Rule 8(a), "a claim for relief must contain…a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). The Supreme Court has found that at minimum, a plaintiff should state "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The complaint need not contain detailed factual allegations, but it must contain more than "a formulaic recitation of the elements of a cause of action." *Id.* at 555 (citation omitted). The Rule 8(a) notice pleading standard requires the plaintiff to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Id.* (internal quotations and citation omitted).

In considering a motion to dismiss for failure to state a claim upon which relief may be granted, all material allegations in the complaint are accepted as true and are to be construed in a light most favorable to the non-moving party. *Cahill v. Liberty Mut. Ins. Co.,* 80 F.2d 336, 337-38 (9th Cir. 1996) (citation omitted). However, this tenet is "inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 1950.  In addition, pro se pleadings must be liberally construed. *See Hebbe v.  Pliler*, 627 F.3d 338, 342 (9th Cir.  2010) ("we continue to construe *pro se* filings liberally when evaluating them under *Iqbal*"). As a general rule, the court may not consider any material beyond the pleadings in ruling on a motion to dismiss for failure to state a claim without converting it into a motion for summary judgment. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir.  2001).

///

1    **B.  Unenumerated 12(b) Motion to Dismiss for Failure to Exhaust**

2           The PLRA provides that "[n]o action shall be brought with respect to prison conditions

3    under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail,

4    prison, or other correctional facility until such administrative remedies as are available are

5    exhausted." 42 U.S.C. § 1997e(a). An inmate must exhaust his administrative remedies

6    irrespective of the forms of relief sought and offered through administrative avenues.

7    *Booth v. Churner*, 532 U.S. 731, 741 (2001). The Supreme Court recently clarified that

8    exhaustion cannot be satisfied by filing an untimely or otherwise procedurally infirm grievance,

9    but rather, the PLRA requires "proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006).

10   "Proper exhaustion" refers to "using all steps the agency holds out, and doing so *properly* (so

11   that the agency addresses the issues on the merits)." *Id*. (quoting *Pozo v. McCaughtry*, 286

12   F.3d 1022, 1024 (7th Cir. 2002)) (emphasis in original).

13          This court has interpreted Justice Alito's majority opinion in *Woodford* as setting forth

14   two tests for "proper exhaustion": (1) the "merits test," satisfied when a plaintiff's grievance is

15   fully addressed on the merits by the administrative agency and appealed through all the

16   agency's levels, and (2) the "compliance test," satisfied when a plaintiff complies with all critical

17   procedural rules and deadlines. *Jones v. Stewart*, 457 F. Supp. 2d 1131, 1134 (D. Nev. 2006).

18   "A finding that a plaintiff has met either test is sufficient for a finding of 'proper exhaustion'.

19   Defendants must show that Plaintiff failed to meet both the merits and compliance tests to

20   succeed in a motion to dismiss for failure to exhaust administrative remedies." *Id*.

21          The failure to exhaust administrative remedies is treated as a matter in abatement and

22   is properly raised in an unenumerated Rule 12(b) motion. *Wyatt v. Terhune*, 315 F.3d 1108,

23   1119 (9th Cir.2003), *cert. denied*, 540 U.S. 810 (2003). Failure to exhaust administrative

24   remedies is an affirmative defense, and defendants bear the burden of raising and proving

25   failure to exhaust.  *Id*.  A court, in deciding a motion to dismiss based on exhaustion, may look

26   beyond the pleadings and decide disputed issues of fact without converting the motion into one

27   for summary judgment. *Id*. (citing *Ritza v. Int'l Longshoremen's & Warehousemen's Union*,

28                                                    4

837 F.2d 365, 368 (9th Cir. 1988) (per curiam)). If a court concludes that the prisoner bringing a suit has failed to exhaust nonjudicial remedies, "the proper remedy is dismissal of the claim without prejudice." *Id.* at 1120.

For prisoners within the NDOC system, exhaustion of administrative remedies requires compliance with the inmate grievance procedure set forth in Administrative Regulation (AR) 740. (Doc. # 48 at 4, Doc. # 48-1 (Ex. B).) Under the version of AR 740 effective during the time period in question, the grievance procedure consisted of: (1) an informal level grievance; (2) a first level grievance; and (3) a second level grievance. (Doc. # 48-1 (Ex. B) at 9-12.)

### III. DISCUSSION

**A. Count VI- Exhaustion**

In Count VI, Plaintiff alleges that Defendants were deliberately indifferent to his serious medical need with respect to his dental care. (Doc. # 8 at 31-33.)

Defendants argue that Plaintiff failed to properly submit his grievance at the second level of review, and therefore did not properly exhaust his administrative remedies with respect to Count VI. (Doc. # 48 at 5.)

Plaintiff argues that he did properly exhaust his administrative remedies with respect to Count VI. (Doc. # 50 at 2-3.) Plaintiff further argues that this issue was also addressed in grievance 20062895863. (*Id.*)

Plaintiff submitted an informal level grievance (grievance number 20062896308) on April 9, 2010, stating that he notified the dentist on February 17, 2010, that he had an abscess on the right side of his jaw that was causing him pain. (Doc. # 48-3 (Ex. D) at 2, 6-7.) The grievance was denied. (*Id.*)

Plaintiff submitted a first level grievance on June 2, 2010, stating that he was provided with inadequate dental care causing him harm. (Doc. # 48-3 (Ex. D) at 5.) In response, he was told to submit a new level one grievance with the informal response attached. (*Id.*, 4)

Plaintiff submitted a second level grievance on June 29, 2010, quoting AR 740's language that all grievance forms submitted are maintained by the prison in the inmate's

1   grievance file.  (Doc. # 48-3 (Ex.  D) at 8-9.) He asked how he could provide a copy of the

2   response, when it is maintained by the prison and is computer generated.  (*Id*.)

3       The official response, according to the Nevada Offender Tracking and Information

4   System (NOTIS) report was that Plaintiff's grievance was improper and he needed to attach all

5   copies of the original grievances and responses.  (Doc. # 48-2 (Ex.  C) at 9.)

6       The court addressed this same issue in *Dennis v.  Stubbs*, *et.  al.*, 3:10-cv-00591-ECR

7   (WGC).  There, the defendants raised the same argument that the plaintiff did not properly

8   exhaust his administrative remedies because he did not submit a copy of his informal level

9   grievance along with his first level grievance. (*See* Doc. # 41 in 3:10-cv-00591-ECR (WGC).)

10  The court issued a Report and Recommendation denying the motion to dismiss (Doc. # 41),

11  which was approved and adopted by Senior United States District Judge Edward C.  Reed, Jr.

12  (Doc. # 44).  The court's analysis in *Dennis* is equally applicable here.

13      Under *Woodford*, Plaintiff was required to properly exhaust his available administrative

14  remedies. *Woodford*, 548 U.S. at 89. As stated above, "proper exhaustion" refers to "using all

15  steps the agency holds out, and doing so *properly* (so that the agency addresses the issues on

16  the merits)." *Id*. (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)) (emphasis

17  in original).

18      Defendants claim that Plaintiff's pitfall was in failing to attach a previous level grievance

19  to the subsequent level grievance[3], and conclude that his failure to correct this deficiency

20  constitutes an abandonment of his grievance. (Doc. # 48 at 5.) While Defendants are correct

21  that AR 740.06 states that a first level grievance that does not comply with procedural

22  guidelines shall be returned to the inmate unprocessed with instructions for proper filing (Doc.

23  # 48 (Ex.  B) at 11), they do not identify where in AR 740 it is specified that an inmate must

24  attach his informal level grievance to the first level grievance, or the first level grievance to the

25

26      [3] Defendants argue that Plaintiff failure was with respect to the second level of review, but it
    appears from the grievance documentation that this denial was noted at the first and second levels.  In

27  any event, there is *no* specification in AR 740 that the inmate must submit his previous level grievance
    on the next level of review.

28
                                                6

1    second level grievance. A review Defendants' Exhibit B indicates this requirement is not set

2    forth anywhere in AR 740. If this requirement is set forth somewhere other than AR 740,

3    Defendants fail to point it out.

4         AR 740 requires that a first level grievance be reviewed, investigated, and responded to

5    by the warden at the institution where the incident being grieved occurred. (Doc. # 48 Ex. B

6    at 11.) The inmate is required to provide a signed, sworn declaration of facts that form the basis

7    for the claim that the informal response is incorrect, including a list of persons with relevant

8    knowledge or information supporting the claim. (*Id.*) While AR 740 states that "additional

9    relevant documentation should be attached at this level," it does not specifically require

10   inclusion of the informal level grievance. (*Id.*)  Likewise, the requirements for submitting a

11   second level grievance in AR 740 make no mention of attaching the lower level grievance. (*See*

12   *id.* at 12.) It makes sense that an inmate would not be required to re-submit the lower level

13   grievance given that AR 740 also provides that grievance documents are to be stored at the

14   institution where the grievance issue occurred, and employees participating in the disposition

15   of a grievance shall have access to records essential to disposition of the grievance. (*Id.* at 7.)

16        The evidence demonstrates that Plaintiff complied with all procedural hurdles NDOC

17   held out to him in AR 740, and he appealed through all levels of the grievance process.

18   Defendants, therefore, have not met their burden of showing Plaintiff failed to properly exhaust

19   his administrative remedies.  Accordingly, Defendants' motion to dismiss Count VI for failure

20   to exhaust administrative remedies should be denied.

21   **B.  Count VII- Failure to State a Claim Upon Which Relief May be Granted as to**

22   **Defendants Baca, Bannister, Cox, Graham, Hartman, Morrow, Neven, and**

23   **Skolnik**

24        **1.  Summary of factual allegations**

25        In Count VII, Plaintiff alleges that Defendants Clark and Graham were deliberately

26   indifferent to his serious medical needs in violation of the Eighth Amendment in connection

27   with their response to his ear infection. (Doc. # 8 at 34-37.) He further alleges that Defendants

28                                                          7

Bannister, Hartman, Morrow, Baca, Neven, Cox, and Skonik are indirectly liable because they: (1) created policies which prohibit constitutional medical care; (2) failed to provide adequate staff or space to provide constitutional medical care; and (3) failed to resolve the issue after being informed there was a problem. (Doc. # 8 at 34.)

Plaintiff asserts that on January 28, 2010, he sent a medical kite indicating he had been suffering from headaches for five (5) weeks. (Doc. # 8 at 35.) On February 5, 2010, he asserts that he sent a second medical kite regarding swelling in his left lymph node, a puffy and painful left ear and jaw, and aches in his inner ear. (*Id*.) On February 9, 2010, he asserts that Defendant Doe 17, who he identifies as Dr. Graham, came to Plaintiff's unit but left without seeing Plaintiff. (*Id*.) He filed an emergency grievance to see a doctor. (*Id*.)

On February 10, 2010, Plaintiff alleges that he was taken to the medical department and spoke to Defendant Clark. (Doc. # 8 at 35.) He contends that he described his symptoms to Defendant Clark but she never properly examined him, and denied his request to see a doctor. (*Id*.) Plaintiff claims that Defendant Clark did look into his left ear, and told Plaintiff he had a fungal infection and a doctor would probably prescribe antibiotics. (*Id*.) A nurse tried to give him a bottle of ear wax remover, but he had previously been told not to use it for an ear infection. (*Id*. at 36.) Plaintiff received an appointment notice to see a doctor on February 16, 2010, but he was never seen. (*Id*.)

Plaintiff alleges that he sent another kite on February 23, 2010, advising that if he was provided with antibiotics, he would not need an appointment. (Doc. # 8 at 36.) He was informed on February 27, 2010, that antibiotics had never been ordered. (*Id*.)

Plaintiff claims that after sixty (60) days, the pain from the ear infection caused him to ask other inmates for their antibiotics and ibuprofen, and the ear infection was "purged" in early April of 2010. (Doc. # 8 at 37.) He asserts that as a result of Defendants' deliberate indifference, he suffered irreparable damage to his left eardrum. (*Id*.)

**2. Summary of argument**

First, Defendants argue that Plaintiff fails to adequately allege supervisory liability on

the part of Defendants Skolnik (former Director of NDOC), Cox (former Assistant Director and current Director of NDOC), Neven (Warden at HDSP), Morrow (Associate Warden of HDSP) and Baca (Associate Warden at HDSP). (Doc. # 48 at 6.)

Second, Defendants argue that Plaintiff has not adequately alleged the personal participation of Defendant Bannister, the Medical Director of NDOC, or Defendant Hartman, the Chief of Nursing Services at NDOC. (Doc. # 48 at 7.)

Finally, Defendants contend that Defendant Duane Graham, a Corrections Caseworker at HDSP, had no involvement in the administration of medical care at HDSP, and therefore, Plaintiff has failed to allege a constitutional violation with respect to this defendant. (Doc. # 48 at 7.)

First, with respect to Defendants Skolnik, Cox, Neven, Morrow and Baca, Plaintiff argues that they are responsible for creating the security policies that grant or deny timely access to medical officials, and for the employment of sufficient medical staff and facilities. (Doc. # 50 at 4.) Plaintiff asserts that he was not seen by medical in a timely manner due to inadequate staffing and facilities, and this creates the requisite causal connection with respect to these Defendants. (*Id.*) He also asserts that Defendant Skolnik was present at a meeting discussing the need for a new medical unit at High Desert State Prison, and therefore he knew of and disregarded the problem. (*Id.* at 5.)

Second, with respect to Defendants Bannister and Hartman, Plaintiff argues that the causal connection between them and the constitutional violation is established by the fact that they were the recipients of Plaintiff's grievances and failed to act. (Doc. # 50 at 5.)

Plaintiff does not address Defendants' argument regarding Defendant Graham.

**3. Analysis**

    **a. Defendants Skolnik, Cox, Neven, Morrow, Baca, Bannister, and Hartman**

There is no respondeat superior liability under § 1983. *See Chudacoff v. Univ. Med Ctr. of S. Nev*, 649 F.3d 1143, 1151 (9th Cir. 2011) (citing *Monell v. Dep't of Soc. Servs*., 436 U.S.

658, 692 (1978)).  "Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1948 (2009). *Iqbal* did not involve a claim of deliberate indifference under § 1983. In *Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011), the Ninth Circuit stated, "[w]e see nothing in *Iqbal* indicating that the Supreme Court intended to overturn longstanding case law on deliberate indifference claims against supervisors in conditions of confinement cases." *Id.* at 1207. In *Starr*, the Ninth Circuit determined "the plaintiff pleaded sufficient facts to plausibly suggest Sheriff Baca's 'knowledge of' and 'acquiescence in' the unconstitutional conduct of his subordinates." *Hydrick v. Hunter*, 2012 WL 89157, at * 3 (9th Cir. Jan. 12, 2012) (citing *Starr*, 652 F.3d at 1207). The Ninth Circuit found that the plaintiff in *Starr* included "many allegations" "detailing what Sheriff Baca knew or should have known, and what Sheriff Baca did or failed to do." *Id.* (quoting *Starr*, 652 F.3d at 1209).

In the recent case of *Hydrick v. Hunter*, 2012 WL 89157 (9th Cir. Jan. 12, 2012), the Ninth Circuit determined that the factual allegations before the court more closely "resemble[d] the 'bald' and 'conclusory' allegations in *Iqbal*, instead of the detailed factual allegations in *Starr*." *Hydrick*, 2012 WL 89157 at * 3 (citing *Iqbal*, 129 S.Ct. at 1951, *Starr*, 652 F.3d at 1216). The Ninth Circuit concluded that the plaintiff in *Hydrick*, "pleaded insufficient facts to establish 'plausible' claims against the Defendants in their individual capacities." *Id.*

In *Hydrick*, like the case currently before the court, the plaintiff's predicated, at least in part, on the theory that the defendants were liable because they created policies that violated the plaintiff's constitutional rights. *See Hydrick*, 2012 WL 89157 at * 4. The Ninth Circuit concluded that instead of including specific allegations of wrongdoing, the plaintiff fell short by including only "conclusory allegations and generalities." *Id.* The court found fault with Plaintiff's failure to allege "a *specific policy* implemented by Defendants or a *specific* event or events instigated by the Defendants..." *Id.* (emphasis original). The court held that, "[e]ven under a 'deliberate indifference' theory of individual liability, the Plaintiff must still allege

1   sufficient facts to plausibly establish the defendant's 'knowledge of' and 'acquiescence' in the

2   unconstitutional conduct of his subordinates." *Id*. (citing *Starr*, 652 F.3d at 1206-07).

3   Here, the only allegations Plaintiff includes with respect to Defendants Bannister,

4   Hartman, Morrow, Baca, Neven, Cox, and Skonik are that they are indirectly liable because

5   they: (1) created policies which prohibit constitutional medical care; (2) failed to provide

6   adequate staff or space to provide constitutional medical care; and (3) failed to resolve the issue

7   after being informed there was a problem. (Doc. # 8 at 34.)  While Plaintiff alludes to other

8   allegations in his opposition (Doc. # 50 at 4-5), these allegations are not set forth in his

9   Amended Complaint. The allegations of the Amended Complaint are more akin to the

10  conclusory allegations contained in *Iqbal* and *Hydrick*, than to the specific allegations in *Starr*.

11  Accordingly, Defendants' motion to dismiss Defendants Bannister, Hartman, Morrow, Baca,

12  Neven, Cox, and Skolnik should be granted with leave to amend.

13  **b. Defendant Graham**

14  Plaintiff identifies Defendant Duane Graham as a Corrections Caseworker at HDSP in

15  the beginning of his Amended Complaint. (*See* Doc. # 8 at 5.) Duane Graham was further

16  identified in Counts I and II, which were dismissed. (*See* Doc. # 8 at 11, 18, Doc. # 9.)  Count

17  VII refers to a "Defendant John Doe # 17 (Dr. Graham)." (Doc. # 8 at 34.) Count VII alleges

18  that on February 9, 2010, an HDSP doctor, Defendant Doe # 17 (previously identified as a Dr.

19  Graham) came to Plaintiff's unit for a scheduled visit but left without seeing Plaintiff. (*Id*. at

20  35.)

21  The allegations in Count VII are related to the conduct of a doctor at HDSP. Defendant

22  Graham is identified as a Corrections Caseworker. It is clear that Duane Graham is not John

23  Doe 17 identified in Count VII. Accordingly, Defendants' motion to dismiss Defendant Duane

24  Graham should be granted, without leave to amend.

25  **IV. RECOMMENDATION**

26  **IT IS HEREBY RECOMMENDED** that the District Judge enter an Order that

27  Defendants' Motion to Dismiss (Doc. # 48) be **GRANTED IN PART AND DENIED IN**

28  11

**PART**, as follows:

(1) Defendants' Motion to Dismiss Count VI, on the ground that Plaintiff failed to exhaust administrative remedies should be **DENIED**;

(2) Defendants' Motion to Dismiss Defendants Bannister, Hartman, Morrow, Baca, Neven, Cox, and Skolnik in Count VII should be **GRANTED, WITH LEAVE TO AMEND**;

(3) Defendants' Motion to Dismiss Defendant Graham should be **GRANTED, WITHOUT LEAVE TO AMEND**.

(4) In sum, Count VI should proceed as alleged. Count VII will proceed against Defendant Clark, and Plaintiff should have leave to amend Count VII with respect to Defendants Bannister, Hartman, Morrow, Baca, Neven, Cox, and Skolnik .

The parties should be aware of the following:

1.     That they may file, pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, specific written objections to this Report and Recommendation within fourteen (14) days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2.     That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1), Fed. R. App. P., should not be filed until entry of the District Court's judgment.

DATED: March 12, 2012.


_____
WILLIAM G.  COBB
UNITED STATES MAGISTRATE JUDGE

12