**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| NARVIEZ ALEXANDER, | )   3:10-cv-00429-RCJ-WGC |
| Plaintiff, | )   **ORDER** |
| vs. | ) |
| DUANE GRAHAM, et. al. | ) |
| Defendants. | ) |

This Order is issued in response to the memorandum decision issued by the United States Court of Appeals for the Ninth Circuit on Plaintiff's appeal. (Doc. # 92.)[1]

**I. BACKGROUND**

District Judge Robert C. Jones issued a screening order (Doc. # 9) on Plaintiff's Amended Complaint (Doc. # 10) on January 14, 2011, allowing certain claims to proceed, dismissing certain claims with and without prejudice, and dismissing certain defendants. Specifically, all claims against the State of Nevada, Nevada Department of Corrections, Ely State Prison (ESP), High Desert State Prison (HDSP), and other defendants sued in their official capacities were dismissed with prejudice. (Doc. # 9 at 15.)  In addition, defendants K. Mellinger, R. Daniels, and L.C. Adams were dismissed. (*Id*.) Substantively, the court dismissed all of

---
[1]  Refers to court's docket number.

Plaintiff's claims with prejudice except that: (1) Count I was dismissed with leave to amend to plead a First Amendment free exercise and RLUIPA claim; and (2) the Eighth Amendment claims in Counts VI and VII were allowed to proceed. (*Id.* at 16.)

Plaintiff did not file an amended complaint with respect to the First Amendment free exercise and RLUIPA claim in Count I. In Count VI, Plaintiff alleges that his Eighth Amendment rights were violated when certain defendants were deliberately indifferent to his serious medical need when they caused him to wait sixty-five days for treatment for an abscess that resulted from a decayed tooth. (Doc. # 10 at 31-32.)  In Count VII, Plaintiff alleges that certain defendants were deliberately indifferent to his serious medical need when they failed to provide proper treatment for an ear infection in his left ear. (Doc. # 10 at 34-37.)

On October 11, 2011, Defendants filed a Motion to Dismiss. (Doc. # 48.) They argued: (1) Plaintiff failed to exhaust his administrative remedies with respect to Count VI; and (2) Plaintiff has not alleged defendants Baca, Bannister, Cox, Graham, Hartman, Morrow, Neven, and Skolnik violated the Constitution through their own actions in Count VII. (*Id.*)

After the matter was fully briefed, the undersigned issued a report and recommendation that the motion be granted in part and denied in part. (Doc. # 55.) The undersigned recommended that the motion to dismiss be denied insofar as Defendants argued Plaintiff failed to exhaust his administrative remedies as to Count VI. (*Id.* at 7.) With respect to Count VII, the court determined that Plaintiff had not properly plead a supervisory liability claim as to defendants Bannister, Hartman, Morrow, Baca, Neven, Cox, and Skolnik; however, the court recommended that Plaintiff be permitted to amend his complaint to correct these deficiencies. (*Id.* at 11.) Additionally, the undersigned recommended that the motion to dismiss be granted, without leave to amend, as to defendant Graham. (*Id.*)

2

On June 14, 2012, District Judge Robert C. Jones issued an order adopting and accepting the report and recommendation. (Doc. # 66.)

As a result, the action proceeded as to Count VI against defendant Dr. Hanson (the dentist) and defendants Baca, Bannister, Cox, Hartman, Neven, and Skolnik (on a theory of supervisory liability) and as to Count VII against defendant Clark.

Defendants then filed a motion for summary judgment on May 9, 2012 (Doc. # 58), and Plaintiff filed a cross-motion for summary judgment on May 29, 2012 (Doc. # 62). When the motions were fully briefed, the undersigned issued a report and recommendation recommending that Defendants' motion for summary judgment be granted and that Plaintiff's cross-motion for summary judgment be denied. (Doc. # 79.)

On December 10, 2012, District Judge Robert C. Jones issued an order adopting and accepting the report and recommendation. (Doc. # 83.) Judgment was entered the following day. (Doc. # 84.) Plaintiff appealed. (Doc. # 85.) In his notice of appeal, Plaintiff identified the following as the principal issues to be raised on appeal: (1) the failure to appoint counsel; (2) the failure to permit Plaintiff to amend Counts I-V and VIII-X (which were dismissed on screening); (3) the granting of Defendants' motion for summary judgment and denial of Plaintiff's cross-motion for summary judgment; and (4) the refusal to permit discovery. (*Id*.)

The United States Court of Appeals for the Ninth Circuit issued its memorandum decision on March 19, 2014, affirming in part, reversing in part, and remanding the action. (Doc. # 92.) The Ninth Circuit affirmed the grant of summary judgment in favor of defendant Clark in Count VII. (*Id*. at 2.) Next, the Ninth Circuit determined the court did not abuse its discretion in denying Plaintiff's motion for appointment of counsel. (*Id*.)

3

As to Count VI, the Ninth Circuit reversed the grant of summary judgment to defendant Hanson, and remanded the claim, finding that Hanson did not provide evidence explaining the delay in treatment of Plaintiff's dental problem such that a triable dispute remained as to whether he acted with deliberate indifference. (*Id.*) Because the decision to grant summary judgment as to supervisory defendants Baca, Bannister, Cox, Hartman, Morrow, and Neven was based on the conclusion that Hanson did not act with deliberate indifference, the Ninth Circuit reversed the grant of summary judgment as to these defendants as well, and remanded for further proceedings. (*Id.* at 3.) As a result of the reversal and remand, the Ninth Circuit did not consider whether the court abused its discretion in denying Plaintiff's request for discovery included in his opposition to summary judgment. (*Id.*)

Finally, the Ninth Circuit found that the court prematurely dismissed, without leave to amend, claims in its order filed on January 14, 2011, stating that "it is not 'absolutely clear' that the deficiencies cannot be cured by amendment." (*Id.*) As such, the Ninth Circuit reversed and remanded for the court to provide Plaintiff with notice of the deficiencies in the complaint and to allow him to amend. (*Id.*)

## II. DISCUSSION

In view of the Ninth Circuit's decision, the court has taken the initial step of reviewing the claims in Counts I-V and VIII-X, that were originally dismissed with prejudice on screening. As set forth in detail below, and in accordance with the decision of the Ninth Circuit, the court will allow certain of Plaintiff's claims to proceed, and advises Plaintiff as to the deficiencies with respect to others, instructing him to amend, if possible. Once the status of the operative complaint (or any amended complaint) is settled, the court will issue further necessary orders or conduct a status conference to address how the action will proceed.

**A. COUNT I**

    **1. Fourteenth Amendment**

        **a. Allegations**

In the First Amended Complaint, Plaintiff alleges that his rights under the Fourteenth Amendment were violated by defendants Baca, Morrow, Garcia, Graham, Nash, Deal, Wuest, Baker and Drain when they, as classification committee members, deprived Plaintiff of due process related to his placement in administrative segregation. (Doc. # 10 at 11 ¶ 1.) He further asserts that defendants Neven, Scillia, McDaniel and Cox indirectly violated his rights because he made them aware of the due process deprivation and they did nothing to remedy the situation. (*Id.* ¶ 2.)

Plaintiff alleges that as a result of their action, he was subject to conditions of confinement that imposed an "atypical and significant hardship in relation to the ordinary incidents of prison life." (*Id.* at 12 ¶ 3.) Plaintiff asserts his confinement to segregation was indefinite. (*Id.*)

Plaintiff contends that on July 1, 2009, he was served with a notice that he was being placed in administrative segregation and would receive a hearing within three days. (*Id.* ¶ 5.) Plaintiff then listed the names of the witnesses he wished to call and sought the production of video evidence. (*Id.*) Plaintiff claims, however, that the hearing was not held by defendants Baca, Morrow and Garcia within three days, and he was then placed in segregated housing. (*Id.* at 12-13 ¶ 6.) Plaintiff filed an emergency grievance stating that he had not received his hearing and asked to be released from segregation, but received no response. (*Id.* at 13 ¶ 7.) After approximately fifty days, on August 19, 2009, Plaintiff was released from segregation, only to be returned there on September 11, 2009. (*Id.* ¶ 8.) Plaintiff acknowledges he received a notice he

would be placed in segregated housing this second time, but once again, he did not receive a hearing before the committee before he was retained in segregated housing. (*Id*.) He says the defendants responsible for this were Baca, Morrow and Graham. (*Id*.)

Then, fifty-eight days later, on November 7, 2009, Plaintiff alleges he attended a disciplinary hearing. (*Id*. at 13 ¶ 9.) Plaintiff was convicted and received time in disciplinary segregation, but appears to complain that the time he already spent in administrative segregation, which he contends was the same as disciplinary segregation, should have been applied to that punishment. (*Id*.)

Next, Plaintiff alleges that between November 7, 2009, and December 15, 2009, he was arbitrarily classified and transferred from a medium custody facility to a maximum custody facility, but did not receive the requisite forty-eight hour written notice or a hearing before a three member panel. (*Id*. at 14 ¶ 10.) He implicates defendant Nash in connection with this allegation. (*Id*.) On December 15, 2009, Plaintiff arrived at ESP's segregated housing unit, and without notice or a hearing, Plaintiff's disciplinary segregation time was suspended and he was placed in administrative segregation. (*Id*. ¶ 11.)

On January 7, 2010, Plaintiff was returned to HDSP's segregation unit. (*Id*.) He asserts this was also without notice or a hearing, as a result of the conduct of defendants Baca, Morrow, and Wuest. (*Id*.) 156 days later, Plaintiff was returned to ESP and was placed in administrative segregation by defendants Drain and Baker. (*Id*. ¶ 12.) Despite his requests to them, these defendants told him he would not receive a hearing and would remain in administrative segregation indefinitely. (*Id*.) Plaintiff advised defendant Skolnik of this, to no avail. (*Id*. at 15 ¶ 13.)

Plaintiff alleges that in these segregated housing units he has been denied participation in the inmate food or clothing package program while general population inmates receive up to four packages through this program per year. (*Id.* ¶ 14.) Plaintiff asserts he is denied access to his personal clothing, while general population inmates receive their clothing. (*Id.* ¶ 15.) He is only allowed to shower every seventy-two hours, and is escorted to and from the showers in only his underwear and in hand and ankle shackles, placing his health in danger because he is forced to kneel on his bare knees in dirt, hair, waste, fecal matter, urine, lint, bacterial and soap scum, while general population inmates walk to the showers every day, unshackled, in a bathrobe or other clothing, and shower in a sanitary manner. (*Id.*)

He further avers that he does not have a personal coat to wear outside in cold weather and must wear the same unsanitary coat that forty-eight other inmates wear or be denied outdoor exercise, while general population inmates can wear their own coats. (*Id.* ¶ 16.) He is not permitted to wear gloves or take water outside while general population inmates have access to water, soda, coffee, or cocoa, and gloves. (*Id.* at 15-16 ¶ 16.)

Plaintiff is confined to his cell twenty-four hours a day and is isolated from contact with other inmates. (*Id.* at 16 ¶ 7.) He cannot converse with staff, and cannot view other people. (*Id.*) If inmates in the unit want to talk to another, they must shout loudly which also deprives inmates of sleep. (*Id.*)

Plaintiff claims he is housed with mentally ill inmates who constantly bang on items in their cells, flood their cells, light fires, scream obscenities, and flush their toilets, which causes officers to spray mace in the units. (*Id.* ¶ 18.)

Plaintiff contends that unlike general population inmates, he has been denied access to religious services and rehabilitative programs. (*Id.* ¶ 19.)

**b. Analysis**

The Fourteenth Amendment provides, "[n]o State shall...deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend XIV, § 1. To invoke its protections, an inmate "must establish that one of these interests is at stake." *Wilkinson v. Astrue*, 545 U.S. 209, 221 (2005); *see also Wolff v. McDonnell*, 418 U.S. 539, 558 (1974); *Chappell v. Mandeville*, 706 F.3d 1052, 1062 (9th Cir. 2013). Once the plaintiff has established that one of these interests is at stake, the court's analysis turns to whether the inmate suffered a denial of adequate procedural protections. *See Biggs v. Terhune*, 334 F.3d 910, 913 (9th Cir. 2003) (citations omitted).

"A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,'...or it may arise from an expectation or interest created by state laws or policies[.]" *Wilkinson*, 545 U.S. at 221 (citing *Vitek v. Jones*, 445 U.S. 480, 493-94 (1980) (finding a liberty interest in avoiding involuntary psychiatric treatment and transfer to mental institution under Due Process Clause itself) and *Wolff v. McDonnell*, 418 U.S. 539, 556-558 (1974) (finding a liberty interest in avoiding withdrawal of state-created system of good-time credits)); *see also Chappell*, 706 F.3d at 1062 (citing *Mendoza v. Blodgett*, 960 F.2d 1425, 1428 (9th Cir. 1992)).

First, under the Constitution itself, a liberty interest is implicated when the conditions of confinement "[exceed] the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force." *Mitchell v. Dupnik*, 75 F.3d 517, 523 (9th Cir. 1996) (internal quotation marks and citation omitted); *see also Chappel*, 706 F.3d at 1062-63 (citations and internal quotation marks omitted) ("[a]s long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is

not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight.") (holding that "investigative contraband watch is the type of condition of confinement that is ordinarily contemplated by the sentence imposed."). The Ninth Circuit has recognized that "only the most extreme changes in the conditions of confinement" such as "involuntary commitment to a mental institution" and "forced administration of psychotropic drugs" have been found to "directly invoke the protections of the Due Process Clause." *Chappel*, 706 F.3d at 1063 (citing *Vitek v. Jones*, 445 U.S. 480, 493-94 (1980) and *Washington v. Harper*, 494 U.S. 210, 221-22 (1990)). Other circumstances where a liberty interest has been found as arising from the Due Process Clause itself include: revocation of probation, *Gagnon v. Scarpelli*, 411 U.S. 778 (1973); revocation of parole status (not just mere denial of parole), *Morrissey v. Brewer*, 408 U.S. 471 (1972); and labeling an inmate as a sex offender**,** *Neal v. Shimoda*, 131 F.3d 818 (9th Cir. 1997).

Second, "[a] state may create a liberty interest through statutes, prison regulations, and policies." *Chappell*, 706 F.3d at 1063 (citing *Wilkinson v. Austin*, 545 U.S. 209, 222 (2005) and *Neal v. Shimoda*, 131 F.3d 818, 827 (9th Cir. 1997).

In *Meachum v. Fano*, the Supreme Court held that "the Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement." *Wilkinson*, 545 U.S. at 221-22 (citing *Meachum v. Fano*, 427 U.S. 215, 225 (1976) (confinement in any of state's institutions is within normal limits or range of custody which the conviction authorized state to impose)). However, as indicated above, "a liberty interest in avoiding particular conditions of confinement may arise from state policies or regulations, subject to the important limitations set forth in *Sandin v. Conner*[.]" *Wilkinson*, 545 U.S. at 222 (citing *Sandin*). *Sandin* rejected the previously employed approach for evaluating whether there was a

state-created liberty interest which looked at the mandatory language of prison regulations. *See id*. (citing *Sandin*, 515 U.S. at 481). Instead, *Sandin* directed that it was more important to look at the "nature of the deprivation." *Id*. (citing *Sandin*, 515 U.S. at 481).

*Sandin* held that liberty interests created by the state are generally limited to "freedom from restraints which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 483-84; *see also Wilkinson*, 545 U.S. at 222-23 (quoting *Sandin*); *Chappell*, 706 F.3d at 1063-64 (recognizing the same).

The Supreme Court has thus far declined to establish a "baseline from which to measure what is atypical and significant in any particular prison system." *Wilkinson*, 545 U.S. at 223 (noting inconsistent conclusions among the circuits, but concluding that assignment to Ohio's "Supermax" facility satisfied this standard "under any plausible baseline"). However, the Ninth Circuit has concluded that in order to determine whether a restraint imposes "atypical and significant hardship," a court considers a condition or combination of conditions or factors on a case by case basis, rather than invoking a single standard. *See Chappell*, 706 F.3d at 1064 (quoting *Keenan v. Hall*, 83 F.3d 1083, 1089 (9th Cir. 1996) (confirming that the inquiry is "context-dependent" and requires "fact by fact consideration"); *see also Serrano v. Francis*, 345 F.3d 1071, 1078 (9th Cir. 2003); *Ramirez v. Galaza*, 334 F.3d 850, 861 (9th Cir. 2003) ("[t]here is no single standard for determining whether a prison hardship is atypical and significant" and each analysis requires "case by case, fact by fact consideration.").

At least three factors have been used to guide this inquiry: (1) "whether the conditions of confinement 'mirrored those conditions imposed upon inmates in analogous *discretionary*

confinement settings, namely administrative segregation and protective custody;'" (2) "the duration and intensity of the conditions of confinement;" and (3) "whether the change in confinement would 'inevitably affect the duration of [the prisoner's] sentence.'" *Chappell*, 706 F.3d at 1064-65 (italics and alteration in original) (quoting *Pifer v. Marshall*, 139 F.3d 907 (9th Cir. Feb. 24, 1998) (unpublished)); *see also Serrano*, 345 F.3d at 1078 (citing *Sandin*, 515 U.S. at 486-87); *Keenan*, 84 F.3d at 1089. Thus, "*Sandin* requires a factual comparison between conditions in general population or administrative segregation (whichever is applicable) and disciplinary segregation, examining the hardship caused by the prisoner's challenged action in relation to the basic conditions of life as a prisoner." *Jackson v. Carey*, 353 F.3d 750, 755 (9th Cir. 2003).

If a liberty interest is implicated, when an inmate is placed in segregated housing, he must be provided, within a reasonable time after such placement, with an informal, non-adversary review of the evidence justifying the decision to segregate the inmate. *See Hewitt v. Helms*, 459 U.S. 460, 476 (1983), *abrogated in part on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995). After being placed in segregation, prison officials must periodically review the initial placement. *See Hewitt*, 459 U.S. at 477 n. 9.

By contrast, when an inmate faces disciplinary charges, due process requires that he receive: (1) written notice of charges; (2) at least twenty-four hours between the time the prisoner receives the written notice and the time of the hearing, so that the prisoner may prepare his defense; (3) a written statement by the hearing officer of the evidence relied upon and the reasons for taking disciplinary action; (4) the right to call witnesses in his defense, when permitting him to do so would not be unduly hazardous to institutional safety or correctional

goals; and (5) legal assistance if the prisoner is illiterate or the issues presented are legally

complex. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).[2]

Upon further review of Plaintiff's allegations, and in light of the Ninth Circuit's decision, the court finds Plaintiff states a colorable claim for denial of his due process rights under the Fourteenth Amendment in Count I. Plaintiff has alleged facts that the conditions of confinement in segregation, whether administrative or disciplinary segregation, do not mirror those in general population. While not all of the facts alleged are indicative of the type of "atypical and significant hardship" required by *Sandin*, he includes  averments that plausibly suggest the denial of a protected liberty interest, including that unlike general population inmates, he is in his cell twenty-four hours a day, isolated from all contact with others; he is housed with mentally ill inmates who create disturbances at all hours; he is denied access to religious and rehabilitative programs; and that his showers are limited in number and take place under much more restrictive conditions than general population inmates. Coupled with the allegation that his confinement to segregation is indefinite, Plaintiff has sufficiently alleged the deprivation of a liberty interest. He further contends he was not afforded the requisite due process in connection with his placement in segregation. Accordingly, Plaintiff may proceed with this claim against defendants Baca, Morrow, Garcia, Graham, Nash, Deal, Wuest, Baker, Drain, Neven, Scillia, McDaniel and Cox.

**2. Equal Protection**

Plaintiff also alleges that the facts asserted in Count I give rise to an equal protection claim.

The Fourteenth Amendment prohibits the denial of "the equal protection of the laws." U.S. Const.  amend XIV, § 1. "Prisoners are protected under the Equal Protection Clause of the

---

[2]  Inmates are not entitled to the aid of trained legal counsel. *Wolff*, 418 U.S. at 591-92, n. 2.

Fourteenth Amendment from invidious discrimination based on race." *Wolff v.  McDonnell*, 418 U.S. 539, 556 (1974).  "The Equal Protection Clause requires the State to treat all similarly situated people equally." *Furnace v. Sullivan*, 705 F.3d 1021, 1030 (9th Cir. 2013) (quoting *Shakur v. Schriro*, 514 F.3d 878, 891 (9th Cir. 2008) (internal quotation marks omitted)). "Although the Equal Protection Clause ensures similarly situated persons are treated alike, it does not ensure absolute equality." *Bruce v.  Ylst*, 351 F.3d 1283, 1288 (9th Cir.  2003) (citation omitted). "To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Furnace*, 705 F.3d at 1030 (quoting *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998)).

Plaintiff's allegations still fail to state an equal protection claim; however, he has leave to amend to include facts that plausibly show that defendants acted with intent to discriminate against him based on his membership in a protected class. Plaintiff must specifically identify the particular defendant(s) to which this claim applies and state facts that implicate that defendant in the claim.

### 3. First Amendment Free Exercise/RLUIPA

To clarify, Plaintiff does not have leave to amend with respect to any possible First Amendment free exercise/RLUIPA claim in Count I because he was previously given an opportunity to amend that claim and failed to do so.

## B. COUNT II

### 1. Allegations

Plaintiff alleges that his Eighth Amendment right to be free from cruel and unusual punishment was violated by defendants Skolnik, Cox, Neven, Scillia, McDaniel, Baca, Morrow,

Nash, Patterson, Brooks, Deal, Graham, Garcia, Wuest, and Drain, when they allowed a policy, custom or procedure to exist that punishes inmates by placing administrative segregation inmates in the overly restrictive disciplinary segregation units, without due process. (Doc. # 10 at 18 ¶ 23.)

He asserts that the placement in administrative segregation denied him of the opportunity to engage in meaningful human contact, health and hygiene and adequate outdoor exercise. (*Id*. ¶24.) He alleges that in either administrative or disciplinary segregation at HDSP, inmates are locked in their cells twenty-four hours a day; only allowed to use the phone once a week; are isolated from all human contact; deprived of religious, educational and rehabilitative programming; only allowed to shower once every seventy-two hours; denied adequate access to a law clerk; denied access to all of their personal property; denied access to the food and clothing package program; are housed in a unit with mentally ill inmates who create disturbances. (*Id*. at 19 ¶ 27.)

**2. Analysis**

Insofar as Plaintiff repeats some of the allegations contained in Count I regarding the alleged due process violation, those averments are repetitive and were addressed in connection with Count I.

The court will now address whether Plaintiff states an Eighth Amendment claim based on the additional allegations described above.

The Eighth Amendment prohibits the imposition of cruel and unusual punishment.  U.S. Const.  amend. VIII. Although conditions of confinement may be restrictive and harsh, they may not deprive inmates of "the minimal civilized measures of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Prison officials must provide prisoners with "food,

14

clothing, shelter, sanitation, medical care, and personal safety." *Toussaint v. McCarthy*, 801 F.2d 1080, 1107 (9th Cir. 1986), *abrogated in part on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995); *see also Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000); *Hoptowit v. Ray*, 682 F.2d 1237, 1246 (9th Cir. 1982). "The circumstances, nature, and duration of a deprivation of [ ] necessities must be considered in determining whether a constitutional violation has occurred." *Johnson*, 217 F.3d at 731. As the Supreme Court recently stated:

> To incarcerate, society takes from prisoners the means to provide for their own needs. Prisoners are dependent on the State for food, clothing, and necessary medical care. A prisoner's failure to provide sustenance for inmates may actually produce physical torture or lingering death.

*Brown v. Plata*, 131 S.Ct. 1910, 1929 (2011) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976) (internal citation and quotation marks omitted)).

Where a prisoner alleges injuries stemming from unsafe conditions of confinement, prison officials may be held liable only if they acted with "deliberate indifference to a substantial risk of serious harm." *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998). The deliberate indifference standard involves an objective and subjective component. First, the alleged deprivation must be, in objective terms, "sufficiently serious." *Farmer*, 511 U.S. at 834 (citation omitted). Second, the prison official must "know of and disregard an excessive risk to inmate health or safety." *Id.* at 837. Thus, "a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 835.

As stated above, the Eighth Amendment is implicated when an inmate is deprived of "food, clothing, shelter, sanitation, medical care, and personal safety." *Rhodes*, 452 U.S. at 347.

///

15

### a. Isolation and Telephone Access

Thus far, neither the Supreme Court nor the Ninth Circuit has held that isolation in prison violates the Eighth Amendment. Nor has a court held that restrictions on access to the telephone to religious, educational, or rehabilitative programs, to personal property violate the Eighth Amendment. Thus, the court's previous ruling dismissing these claims stands.

### b. Clothing

While the deprivation of adequate clothing may amount to an Eighth Amendment violation, the facts included by Plaintiff do not state that he does not have access to adequate clothing, but that he does not have access to the clothing of his choosing. Plaintiff is permitted leave to amend to correct this deficiency, if possible, by including factual allegations that plausibly suggest he has been denied adequate clothing that rises to the level of an Eighth Amendment violation.

### c. Shower

Upon further review, the court finds that Plaintiff may proceed with his Eighth Amendment claim related to the sanitary conditions in the shower he has experienced in segregation.

### d. Housing with Mentally Ill Inmates

Plaintiff contends that his Eighth Amendment rights were violated because he was housed in a unit with mentally ill inmates who create disturbances. This in and of itself does not state an Eighth Amendment claim; however, Plaintiff may amend, if he can, to assert facts that would give rise to such a claim, *i.e.,* showing that this housing arrangement in some way jeopardized his personal safety.

///

**e. Outdoor Exercise**

To the extent he references a denial of adequate outdoor exercise, this claim is addressed in connection with Count X, where Plaintiff includes additional substantive facts.

**f. Access to a Law Clerk**

The denial of access to a law clerk is not a violation of the Eighth Amendment; however, Plaintiff does include additional facts regarding a claim for denial of access to the courts, including denial of access to a law clerk, in Count VIII. Therefore, the court will address the sufficiency of Plaintiff's allegations on this topic in connection with Count VIII.

**C. COUNT III**

Plaintiff alleges that defendants Baker, McDaniel, Cox, Skolnik, and John and Jane Does # 1-4 have violated his rights under the Eighth Amendment by forcing him to submit to unsanitary and unhygienic conditions of confinement. (Doc. # 10 at 21 ¶ 33.)

Once again, Plaintiff alleges that while he was housed in segregation at ESP, he was only permitted to shower every seventy-two hours, under the same conditions he described in Count I, and includes additional details regarding this experience. (*See id*. ¶¶ 35-41.) As the court stated above, upon further review, it finds Plaintiff states a plausible claim under the Eighth Amendment related to these factual allegations.

**D. COUNT IV**

Plaintiff alleges that his rights under the Eighth and Fourteenth Amendments were violated when defendants, whom Plaintiff initially identified as Does but then identified as defendants Acevedo, Allen, Provencial, Johnson, Pender, and Volkert, searched Plaintiff's cell and destroyed or discarded Plaintiff's personal property without documenting it in accordance with Administrative Regulation (AR) 422. (Doc. # 10 at 24 ¶ 43.) He contends that defendants

17

Scillia, Patterson, Nash, and Rainone were informed of these violations but did nothing to remedy the situation. (*Id.* ¶ 44.) He claims these defendants all allowed Plaintiff's property to be confiscated and then prevented it from being returned or having Plaintiff be reimbursed. (*Id.*) He goes on to describe the particulars of the various incidents when this occurred.

As the court originally stated, these allegations do not give rise to an Eighth Amendment violation, but are more aptly analyzed under the Fourteenth Amendment as Plaintiff is asserting the denial of due process in connection with the confiscation of his property.

Where a prisoner alleges a deprivation of a property interest caused by the unauthorized negligent or intentional action of a prison official, he does not state a constitutional claim where the state provides an adequate post-deprivation remedy. *See Zinermon v. Burch*, 494 U.S. 113, 129-32 (1990); *Hudson v. Palmer*, 468 U.S. 517, 533; *Barnett v. Centoni*, 3 F.3d 813, 816 (9th Cir. 1994) (per curiam). Nevada provides a meaningful post deprivation remedy for the loss of personal property. *See* Nev. Rev. Stat. § 41.041, § 41.0322.

However, if a prisoner is challenging conduct taken pursuant to an established or authorized state procedure, rule or regulation, the existence of an adequate post-deprivation remedy is irrelevant. *See Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 435-36 (1982). "[W]here the state provides a meaningful postdeprivation remedy, only authorized, intentional deprivations constitute actionable violations of the Due Process Clause. An authorized deprivation is one carried out pursuant to established state procedures, regulations, or statutes." *See Piatt v. McDougall*, 773 F.2d 1032, 1036 (9th Cir. 1985). "The underlying rationale...is that when deprivations of property are effected through random and unauthorized conduct of a state employee, predeprivation procedures are simply 'impracticable' since the state cannot know when such deprivations occur." *Hudson*, 468 U.S. at 533.

It is not entirely clear from Plaintiff's allegations whether he is alleging the unauthorized negligent or intentional deprivation of property by these defendants, in which case he would not state a claim, or that the search and destruction of his property took place pursuant to established or authorized state procedures, rules or regulations, in which case he would state a claim. Plaintiff may amend this claim to assert, if possible, facts that plausibly suggest that the destruction of his property was the result of an established or authorized state procedure, rule or regulation.

**E. COUNT V**

In Count V, Plaintiff alleges additional deprivations of his personal property against defendants Cool, Kim, Quiros, Rigney, Neven, Morrow, Cox, Baker, and Brooks. (Doc. # 10 at 27-30.) As with Count IV, Plaintiff does not allege whether these deprivations of his property were unauthorized negligent or intentional deprivations of property, or were pursuant to authorized state procedures, rules or regulations. Like Count IV, Plaintiff may amend Count V to state, if possible, facts that plausibly suggest that the destruction of his property was the result of an established or authorized state procedure, rule or regulation.

**F. COUNT VIII**

**1. Allegations**

In Count VIII, Plaintiff alleges that his First Amendment right of access to the courts, right to privacy and his right to equal protection under the laws were violated by defendants Skolnik, Cox, Neven, Baca, Pharris and Clarkson when they: (1) deprived him of access to a law clerk, research materials, a law library to conduct research, and books citing case law newer than 2001; (2) deprived him of confidentiality by allowing his legal pleadings to be reviewed by other inmates, non-law library staff, and by the defendants or respondents in this case; and

(3) deprived him of timely acquisition of the research materials he did have access to. (Doc. # 10 at 38 ¶ 88.)

Plaintiff claims defendants Cox, Neven and Baca instituted a policy which prohibits law clerks from entering the segregated housing units to assist inmates in obtaining research materials or to assist in preparing legal pleadings, and instead, these inmates can only communicate with ill-trained and ineffective "law library supervisors." (*Id*. ¶ 89.) He further alleges that defendants Pharris and Clarkson have an unofficial policy of denying inmates the ability to check out materials which cite to case law newer than 2001, denying all effective means of research or participating in litigation. (*Id*. at 39 ¶ 90.) He states that inmates can check out case law but must know the case name and citation and are limited to five cases per week. (*Id*.) Inmates must then wait days or weeks to receive these materials. (*Id*. ¶ 91.) Inmates must then return the cases through the inmate mail system, and many times they get lost or misplaced, and this denies the inmate the ability to check out additional cases. (*Id*. ¶ 92.)

Plaintiff complains about the fact that others can see his legal pleadings when they are sent for copying. (*Id*. ¶ 91.)

He claims that this conduct precluded him from being able to effectively research or litigate his pending case, case number A538390 in the Eighth Judicial District Court. (*Id*. ¶ 93.)

Finally, he generally asserts that he was treated differently than other similarly situated inmates. (*Id*. ¶ 94.)

**2. Access to Courts**

Prisoners have a constitutional right of access to the courts. *Lewis v. Casey*, 518 U.S. 343, 346 (1996). Plaintiff is advised that as a jurisdictional requirement, he must establish that he suffered actual injury. *Id*. at 348. "Actual injury" is defined as "actual prejudice with respect to

contemplated or existing litigation, such as the inability to meet a filing deadline or present a claim." *Id*. In addition, the right of access to the courts is limited to non-frivolous direct criminal appeals, habeas corpus proceedings, and actions brought pursuant to 42 U.S.C. § 1983. *Id*. at 353 n. 3, 354-55. In *Casey,* the United States Supreme Court held that the right is only to bring complaints to the federal court and not a right to discover such claims or to litigate them effectively once filed with a court. *Id*. at 354-55.

This right "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds v.  Smith*, 430 U.S. 817, 828 (1977), *limited in part on other grounds in Lewis*, 518 U.S. at 354; *see also Phillips v.  Hust*, 588 F.3d 652, 655 (9th Cir.  2009); *Madrid v.  Gomez*, 190 F.3d 990, 995 (9th Cir.  1999).  The right, however, "guarantees no particular methodology but rather the conferral of a capability—the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts...[It is this capability] rather than the capability of turning pages in a law library, that is the touchstone" of the right of access to the courts.  *Lewis*, 518 U.S. at 356-57.  Prison officials may select the best method to ensure that prisoners will have the capability to file suit.  *See id*.  at 356. Prisons "might replace libraries with some minimal access to legal advice and a system of court-provided forms...that asked the inmates to provide only the facts and not to attempt any legal analysis." *Id*. at 352.

While Plaintiff claims that he was precluded from being able to effectively research or litigate his pending case, case number A538390 in the Eighth Judicial District Court, he does not specifically allege the inability to meet a filing deadline or present a claim in that case. Plaintiff may amend to try to cure this deficiency.

**3. Privacy**

Plaintiff alleges that his right to privacy was violated when others were able to see his *legal pleadings*. Legal pleadings by their very nature are public documents because they are filed with the court and any of the member of the public has the ability to view them (unless an order sealing a particular document has been issued). *See, e.g., Keenan v. Hall*, 83 F.3d 1083, 1094 (9th Cir. 1996). Plaintiff may amend, if possible, to allege that individuals were permitted to see documents submitted to the court that were not otherwise available to the public, which *may* state a privacy claim.

**4. Equal Protection**

Plaintiff has leave to amend to allege facts that plausibly demonstrate defendants acted with an intent or purpose to discriminate against him based upon his membership in a protected class.

## G. COUNT IX

Plaintiff alleges that his rights under the First, Eighth, and Fourteenth Amendments to be free from retaliation, discrimination and harassment were violated by defendants Dooley, Fowler, Lamprich, Baca and Wuest, when they punished Plaintiff for exercising his right to the redress of grievances. (Doc. # 10 at 41 ¶ 96.) In addition, he claims defendants Cox, Neven and Morrow were aware of the retaliatory action taken by their employees and failed to do anything to resolve the situation. (*Id*. ¶ 97.) Count IX involves two incidents, which will be described in further detail below.

///

///

///

### 1. First Incident-Defendants Baca, Dooley, Fowler, Lamprich

#### a. Allegations

First, Plaintiff contends that defendants Baca, Dooley, Fowler and Lamprich prepared a falsified government document charging Plaintiff with a violation of the penal disciplinary code for preparing and assisting another inmate with the grievance procedure, and for refusing to cell with an inmate with whom he did not get along. (*Id*. at 41-42 ¶¶ 98-99.) He claims that defendants Dooley, Fowler and Lamprich did nothing to acknowledge the risk of harm this posed, and refused to take measures to protect either inmate from potential danger. (*Id*. at 42 ¶ 100.)

Plaintiff goes on to allege that the inmates sent in an emergency grievance (they were only provided with one form, so it appears they sent it in jointly). (*Id*. ¶ 102.) As a result of the filing of the grievance, Plaintiff asserts that defendants Baca, Dooley and Fowler separated the inmates; however, because they had filed a grievance, Plaintiff avers that the defendants conspired to falsify a document to retaliate and harass Plaintiff by accusing him of threatening the other inmate. (*Id*.) The document was a notice of charges that Plaintiff contends contained the false statement that the other inmate told an officer that Plaintiff was going to stab him if he did not leave Plaintiff's cell. (*Id*. at 43-44 ¶ 103.) Plaintiff alleges that the officer secretly told Plaintiff that the other inmate never actually made that statement and later testified the report was false. (*Id*.)

#### b. Analysis

##### i. Eighth Amendment Deliberate Indifference to Safety

Plaintiff attempts to state an Eighth Amendment claim for deliberate indifference to his safety based on the fact that defendants Dooley, Fowler and Lamprich did nothing to

acknowledge a risk of harm faced by Plaintiff by being celled with the other inmate with whom he did not get along. Prison officials "must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 932 (1994) (quoting *Hudson v. Palmer*, 486 U.S. 517, 526-27 (1984)). However, Plaintiff must allege facts demonstrating that prison officials were deliberately indifferent to a serious threat to his safety. *Farmer*, 511 U.S. at 834. When a plaintiff claims prison officials failed to take reasonable steps to protect him, he must show that "he is incarcerated under conditions posing a substantial risk of serious harm." *Id*. (citations omitted). In addition, Plaintiff must allege that the prison official knew of and disregarded an excessive risk to his safety. *Id*. at 837.

Plaintiff merely alleges that he and this other inmate did not get along. He includes no facts that demonstrate he faced a "substantial risk of serious harm" when he had to share a cell with this inmate. Moreover, he alleges that as soon as he filed a grievance, the two inmates were separated. He does not claim that during the short period of time they were forced to be in a cell together he faced a substantial risk of serious harm. Plaintiff may amend this claim, if possible, to include allegations demonstrating that he faced a substantial risk of serious harm as a result of his having to cell with this inmate and that the particular defendants knew of and disregarded this risk.

### ii. Retaliation

The fact that the notice of charges contained a statement Plaintiff claims to be false does not give rise to a claim. *See, e.g., Sprouse v. Babcock*, 870 F.2d 450, 452 (8th Cir. 1989); *Freeman v. Rideout*, 808 F.2d 949, 951-52 (2d. Cir. 1986), *cert. denied*, 485 U.S. 982 (1988) (allegation that false evidence was planted by a prison guard does not state a constitutional claim where procedural process protections are provided); *see also York v. Hernandez*, No. C 09-6080

LHK (PR), 2011 WL2650243, at * n. 3 (N.D. Cal. 2011) (where plaintiff alleged violation of due process rights by filing false charges against him, court stated, "without more, a prisoner has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest."); *Tafilele v. Harrington*, No. 1:10-cv-01493-GBC (PC), 2011 WL2462750, at *7 (E.D. Cal. 2011).

Plaintiff *does*, however, include sufficient allegations that defendants Dooley, Fowler and Lamprich *retaliated* against him for filing a grievance by filing a notice of charges that he claims was false. Therefore, his retaliation claim may proceed.

### 1. Second Incident-Defendants Baca, Neven and Wuest

#### a. Allegations

Second, Plaintiff claims that defendants Baca, Neven and Wuest violated his rights by retaliating and discriminating against him and harassing him for grieving defendant Baca's practices regarding the hiring of unit porters. (*Id*. at 43 ¶ 105.) Plaintiff alleges that on March 22, 2010, he and two Hispanic inmates were eligible for the unit porter position in Unit 3A, but the Hispanic inmates did not want the job and Plaintiff was already temporarily filling in for the position. (*Id*. ¶ 106.) Plaintiff avers that defendant Baca is Hispanic, and refused to hire Plaintiff because he was not Hispanic (Plaintiff is African American). (*Id*.) Plaintiff complained to Lieutenant Stroud and requested that he contact the warden regarding defendant Baca's discriminatory practices. (*Id*. ¶ 107.) Plaintiff claims that the unit staff determined no one else wanted the job and requested that defendant Baca hire Plaintiff. (*Id*. at 44 ¶ 108.) Instead of hiring him, Plaintiff contends defendant Baca moved Plaintiff to another housing unit so he would not be hired for the position in Unit 3A. (*Id*. ¶ 109.)

///

25

### 2. Analysis

Plaintiff states colorable retaliation and equal protection claims against defendant Baca. The retaliation is based on the fact that defendant Baca moved Plaintiff to another unit after he complained about defendant Baca's alleged discriminatory practices. The equal protection claim is based on the allegation that Plaintiff, an African American inmate, was treated differently than similarly situated Hispanic inmates in relation to the hiring for the unit porter position in Unit 3A.

Plaintiff provides no factual allegations, however, that in any way implicate defendants Neven and Wuest in this claim even though he names them as such. Plaintiff may amend his complaint to add allegations to implicate these defendants, if possible.

## H. COUNT X

Plaintiff claims that his right to be free from cruel and unusual punishment under the Eighth Amendment and right to equal protection of the laws under the Fourteenth Amendment were violated by defendants Skolnik, Cox, Neven, Baca, Morrow, and Wuest when they deprived him of adequate outdoor exercise and recreation for ninety days, while other inmates housed in another unit received daily outdoor recreation privileges. (Doc. # 10 at 45 ¶ 112.)

Specifically, Plaintiff claims that when he arrived at HDSP on January 13, 2010, he was housed in Unit 3A, and was told the inmates in the unit were not receiving any outdoor yard time, so Plaintiff was forced to sit in his cell twenty-four hours a day. (*Id*. ¶114.) He avers that after he complained he received one hour of solitary yard time on January 29, 2010. (*Id*.) Thereafter, Plaintiff only received one hour of yard time on February 6, 11, 15, 19, 22, 25 and 28. (*Id*. at 46 ¶ 115.) Plaintiff complained further, and received one hour of yard time on March 3, 6, 9, 10, 12, 15, 18, 21, 24 and 27. (*Id*. ¶ 116.) He contends he never received five hours of

yard time per week. (*Id*. ¶ 117.) Plaintiff claims that denial of adequate outdoor exercise resulted in his muscle tissue and stamina deteriorating, and deprived him of fresh oxygen which resulted in headaches, cabin fever, dizziness, fatigue, and depression. (*Id*. ¶ 118.)

Plaintiff references both the Eighth Amendment's prohibition against cruel and unusual punishment and the Fourteenth Amendment's Equal Protection Clause, but this claim is grounded in the Eighth Amendment and not the Fourteenth Amendment. "Deprivation of outdoor exercise violates the Eighth Amendment rights of inmates confined to continuous and long-term segregation." *Keenan v. Hall*, 83 F.3d 1083, 1089 (9th Cir. 1996) (citing *Spain v. Procunier*, 600 F.2d 189, 199 (9th Cir. 1979)), *amended by* 135 F.3d 1318 (9th Cir. 1998).

Plaintiff alleges that from January 13 to January 29, 2010, he received only one hour of outdoor exercise time. In the month of February, he received seven hours of outdoor exercise time. In the month of March, he received 10 hours of outdoor exercise time. He claims he should be entitled to a minimum of five hours per week. Plaintiff states a plausible Eighth Amendment conditions of confinement claim related to the denial of outdoor exercise, and this claim may proceed.

### III. CONCLUSION

Upon review of the Ninth Circuit's decision remanding a portion of this case, the court issues this order, allowing certain claims to proceed and advising Plaintiff that he may amend to correct deficiencies noted in other claims, as follows:

(1) Plaintiff may proceed with his Fourteenth Amendment due process claim in Count I against defendants Baca, Morrow, Garcia, Graham, Nash, Deal, Wuest, Baker, Drain, Neven, Scillia, McDaniel and Cox;

(2) Plaintiff may amend to allege facts showing the defendants implicated in Count I acted with an intent to discriminate against Plaintiff based upon his membership in a protected class in violation of the Equal Protection Clause;

(3) Plaintiff is not permitted to amend with respect to any First Amendment Free Exercise Clause or RLUIPA claim in Count I as he was previously granted leave to amend and failed to file an amended complaint;

(4) The court's prior ruling dismissing the Eighth Amendment claim in Count II related to isolation and access to telephones stands;

(5) Plaintiff may amend to allege facts demonstrating he was denied adequate clothing in violation of the Eighth Amendment in Count II;

(6) Plaintiff may proceed with his Eighth Amendment conditions of confinement claim in Count II related to the shower conditions he faced in segregation;

(7) Plaintiff may amend to include facts to state an Eighth Amendment claim related to his housing with mentally ill inmates in Count II;

(8) Count III is duplicative of Plaintiff's claim in Count II regarding the shower conditions;

(9) Plaintiff may amend, if possible, to allege in Count IV that the deprivation of his property was pursuant to an established or authorized procedure, rule or regulation;

(10) Plaintiff may amend, if possible, to allege in Count V that the deprivation of his property was pursuant to an established or authorized procedure, rule or regulation;

(11) Plaintiff may amend his access to courts claim in Count VIII to allege actual injury, *e.g.*, that he was unable to meet a filing deadline or otherwise present a claim as a result of the conduct described in that count;

28

(12) Plaintiff may amend, if possible, Count VIII to state a colorable privacy claim;

(13) Plaintiff may amend, if possible, Count VIII to allege intentional discrimination based on his membership in a protected class in violation of the Equal Protection Clause;

(14) Plaintiff may amend his Eighth Amendment deliberate indifference claim against defendants Dooley, Fowler, and Lamprich in Count IX to include facts that demonstrate he faced a substantial risk of serious harm and that these defendants knew of and disregarded that risk;

(15) Plaintiff may proceed with his retaliation claim in Count IX against defendants Dooley, Fowler and Lamprich;

(16) Plaintiff may proceed with his retaliation and equal protection claims in Count IX against defendant Baca;

(17) Plaintiff may amend to include facts implicating defendants Neven and Wuest in Count IX;

(18) Plaintiff may proceed with his Eighth Amendment claim in Count X related to the deprivation of outdoor exercise.

///

///

///

///

///

///

///

///

///

29

Any amendment must be filed and served within **THIRTY DAYS** of the date of this order and must be clearly marked the "Second Amended Complaint" and must be complete in and of itself, without reference to any prior pleading. Any allegations, parties or requests for relief not carried over from the previous complaint will no longer be before the court. Plaintiff is cautioned that if he fails to file an amended complaint within the specified time period, the complaint will proceed only on those claims permitted in this order and on the Eighth Amendment claim in Count VI for deliberate indifference related to his dental treatment.

**IT IS SO ORDERED**.

DATED: April 18, 2014

_____
**WILLIAM G. COBB**
**UNITED STATES MAGISTRATE JUDGE**